# CHARLESTON.

JACOBS v. BALTIMORE & OHIO RAILROAD COMPANY.

Submitted February 1, 1910.    Decided February 7, 1911.

1. RAILROADS—*Fires—Actions—Burden of Proof.*

In an action against a railroad company for destruction of a house by fire alleged to have started from sparks from a locomotive, the burden is on the plaintiff to prove that the fire started from a spark; but when that has been proven, a presumption arises that the company was negligent, which presumption it must repel by disproving negligence.

2. SAME—*Fires—Sparks from Locomotives—Liability of Company.*

Though a fire injuring property contiguous to a railroad starts from sparks from a locomotive, the company is not liable unless guilty of negligence.

3. SAME—*Fires—Actions—Evidence.*

In an action against a railroad company for damage to property by fire set by a spark from a locomotive, attributed to a defective spark arrester, the company meets the presumption of negligence arising from the fact that the fire originated from sparks by proving that it employed competent servants and used approved and reasonably safe spark arresters of the kind generally in use on well conducted railroads.

Error to Circuit Court, Jefferson County.

Action by Mary E. Jacobs, for use, etc., against the Baltimore & Ohio Railroad Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*H. H. McCormick,* for plaintiff in error.

*Forrest W. Brown,* for defendant in error.

BRANNON, JUDGE:

A dwelling house belonging to Mary E. Jacobs near Duffields Station near the tracks of the Baltimore & Ohio Railroad was destroyed by fire, and she brought an action against the Baltimore & Ohio Railroad Company to recover damages for its destruction, claiming that the fire originated from sparks emitted from a locomotive of that company. The defendant entered a

demurrer to the evidence, and upon that demurrer the circuit court of Jefferson county rendered a judgment for the defendant, and Mary E. Jacobs appeals.

Two important questions arise in this case. First, Did the fire originate from sparks from a locomotive?  There is a volume of evidence on both sides upon this question.  We shall not detail it.  I remark in this case, as I have in several cases heretofore, that in my opinion the custom of incorporating in opinions of this Court long recitals of evidence or facts rendering opinions prolix and tedious, and filling the reports at public expense with matter which constitutes no precedent, as rarely are two cases exactly alike in facts, is a bad custom.  These decisions are intended to lay down propositions of law, not to recite mere evidence.  As to the question whether the fire was caused by a locomotive, it is doubtful.  The burden to prove the fact is on the plaintiff, and, as there were two stoves in the house, and possibly the fire might have started from one of them, and as the house had stood from 1887 to 1905 without injury from the many trains of the railroad company, and as the engines had first-class spark arresters, and evidence goes to show that it was highly improbable, if not impossible, for sparks to set fire to a house from those engines, it may be seriously questioned whether the plaintiff has fully sustained by evidence the burden of proof that the fire originated from a locomotive.

But let us say that the fire came from a locomotive.  That does not inevitably fix liability on the railroad company.  There must be negligence on its part.  "As a general rule a railroad company is liable for damages resulting from fire caused by the operation of its road where it fails to use ordinary and reasonable care and precaution to prevent the setting out or spread of such fire, but if such care has been used the company will not be liable."  33 Cyc. 1325:  "Negligence is the gist of the action, and unless negligence be shown there can be no recovery." 3 Elliot on Railroads, § 1221.  In such cases as this the burden, contrary to the general rule, rests on the defendant to exonerate itself from the charge of negligence.  When once it is established that the locomotive caused the fire the company must exonerate itself from negligence.  In that late excellent work, American & English Annotated Cases, Vol. 1, p. 815, is an excellent collection of cases to sustain the proposition of law that

when it has been proven that a fire originated from a locomotive there is a presumption of fact of negligence against the railroad company, which presumption the company must repel. So held in *Kimball* v. *Borden,* 95 Va. 210. There is a great conflict of authorities upon this question, some holding that the burden of showing negligence is upon the plaintiff, others holding that the burden is on the defendant. The authorities are discussed in 3 Elliot on Railroads, § 1242. I think the weight of authority and the better reason is that the burden rests on the railroad company. But say so. We think that the railroad company has met this demand by proof. Without detailing it the evidence not contradicted shows that the locomotives in question were in good condition on that very day of the fire and had spark arresters in good condition, of the latest and most approved kind. As I have shown above the company must be guilty of negligence, but the company meets it when it shows that its engines were equipped with approved apparatus for preventing the escaping of sparks and that such apparatus was in good repair, and as effective as any in general use on well conducted railroads. 3 Elliot on Railroads, §1245, 1245a; ·13 Am. & Eng. Ency. L. 504; 33 Cyc. 1333; Thompson on Negligence, Supp. § 2232. The company exonerates itself when it shows that it was free from negligence in the construction, equipment or management of its locomotives. 33 Cyc. 1361. "A contiguous owner assumes the risk of accidental loss by fire not occasioned through negligence on the part of the railroad company." "A railroad company is not insurer against loss or damage that may occur by fire escaping from its engines without negligence." Notes in 33 Cyc. 1326. What more can be required of a railroad company? From a perfect arrester a spark might escape. Human effort sometimes is inadequate. The Legislature has authorized it to run its trains, and in doing so it must use fire. Sometimes injury may result. All reason demands is that it have competent enginemen and approved appliances for safety. A master is not required to have the very best of machinery for the safety of his employees, but such as is reasonably safe and in common use. Would you require more from a railroad company? But the truth is, that the evidence in this case shows that the trainmen were experienced and competent and that the fire arresters were of the most approved kind

used anywhere.    That there were no better spark arresters used anywhere.

For these reasons we affirm the judgment of the circuit court.

*Affirmed.*