# CHARLESTON.

EDDIE EDMONDS v. MONONGAHELA VALLEY TRACTION CO.

Submitted September 19, 1916.    Decided September 26, 1916.

1. ELECTRICITY—*Care of Electric Wires.*
   In the erection and maintenance of its trolley wires carrying heavy currents of electricity, on or across a space over which telephone wires are strung and operated, an electric railway company is bound to make approved and effective provision against communication of its current to the telephone wires. (p. 716).

2. SAME—*Care of Wires—Res Ipsa Loquitur.*
   If its current escapes through or by means of such wires and causes injury to a person or to property in a highway or other place in which he or it may rightfully be, the maxim, *res ipsa*
   78 W. Va.

*loquitur,* applies; and the occurrence of the injury by means of the current so diverted is evidence of negligence on the part of the railway company. To exonerate itself from such charge it must prove its adoption of approved and effective means to prevent such diversion. (p. 717).

3. SAME—*Injuries—Action—Jury Question.*

Proof of an injury in a public road in such manner, by a telephone wire under which a trolley wire has been placed, at a distance of only about eight inches, an unexplained break in the former by reason of which it came into contact with the latter and former interference of these wires, causing injury to telephones and houses, to the knowledge of the railway company, make an issue proper for submission to a jury, as to whether the railway company was negligent in the maintenance and operation of its wires. (p. 717).

4. SAME.

Whether a farmer inconversant with the subject of electricity, and inexperienced in the use thereof, is guilty of negligence in disconnecting a wire so charged from his house and placing the end thereof in a public road, to prevent injury to his property and family, by methods indicative of utter lack of appreciation of its dangerous character, is a question proper for jury determination. (p. 717).

Error to Circuit Court, Harrison County.

Action by Eddie Edmonds against the Monongahela Valley Traction Company. There was a judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Davis, Swartz & Templeman,* for plaintiff in error.

*Smith & Jackson,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment complained of, standing on a verdict of a jury, is for the value of a horse killed in a public road, by contact with a telephone wire, heavily charged with electricity from the defendant company's trolley wire or high tension wire, or both, and disconnected from a farm dwelling house and thrown into the road by the owner of the house, to prevent injury to it and his family by reason of the charge of electricity it carried.

The grounds of defense are, (1), lack of proof of negligence on the part of the defendant; and, (2), if there is evidence of such negligence, conclusive proof of an intervening negligent or wrongful act of a third party, the farmer, constituting the proximate cause of the injury. These propositions were invoked by requests for instructions not given, objections to instructions given and a motion for a new trial.

Facts established and evidence tending to prove others render the first position manifestly untenable. Sometime before the construction of the defendant's electric railway and erection of its poles and wires, the People's Telephone Company, under permits given by the county courts of Lewis and Harrison counties, had put up short poles along a certain public highway and strung its telephone wires thereon. At certain places, the electric railway of the defendant, subsequently constructed, crossed the public highway on which the telephone lines were. At some of these crossings, if not all of them, the defendant's trolley wire carrying six hundred volts of electricity was placed only about eight inches below the telephone wires and its high tension wire carrying twenty two thousand volts, some distance above them. On several occasions ante-dating the occurrence which resulted in the death of plaintiff's horse, the heavy current from the defendant's wires, by contact or otherwise, so heavily charged the telephone wires that they burned out telephone instruments, set houses on fire and severely shocked persons endeavoring to disconnect the wires from their houses to prevent injury. This dangerous interference had been brought to the attention of officers and agents of the defendant company, who had promised to take the telephone wires down and place them under the railway track at the expense of the railway company. The cost of repairing the injured telephone instruments or replacing, with new ones, those burned out, had been paid by the defendant company. On the occasion of the injury for which this action was brought, a telephone wire seems to have broken at or near a place known as "Corley Stop," and fallen down on the trolley wire. There is no evidence of this fact except the statement of an employee of the telephone company, on cross-examination, that he had been told the line

was then broken at that point.  As this hearsay evidence was
not objected to, the fact to which it relates may be regarded
as conceded.  However, there is no evidence tending to prove
that the break was caused by a storm or any other agency be-
yond the control of the defendant; and, as the trolley wire
was only about eight inches below the telephone wire, it is
not improbable that the trolley pole sometimes raised the trol-
ley wire sufficently to bring it into contact with the telephone
wire, and this may have caused the break, if one occurred.
That a trolley pole held in contact with the lower side of the
trolley wire by a strong spring does raise it considerably, un-
der certain conditions, is a matter of common knowledge of
which the jury could take notice.  It is generally known, also,
that a continued or frequently repeated heavy electrical
charge of a small wire will burn it in two or weaken it so as
to cause it to break of its own weight.

The maxim, *res ipsa loquitur*, applies in cases of injury of
this kind.  *Bice* v. *Electrical Co.,* 62 W. Va. 685; *Snyder* v.
*Electrical Co.,* 43 W. Va. 661.  The agency of injury was the
defendants electrical current, and the occurrence of the in-
jury, itself and alone, raises a presumption of negligence on
the part of the defendant  which it was bound to repel by proof
of adoption of all reasonable provisions for safety.  Injury in-
flicted by an agency so dangerous in character as to bring it
within the principle, *res ipsa loquitur,* is evidence of negli-
gence on the part of the person using and controlling such
agency.  Persons using deadly electrical currents are bound
to the exercise of a very high degree of care to prevent escape
or diversion thereof to the injury of any person.  In *Snyder*
v. *Electrical Co.,* Judge BRANNON said: ''I have ventured to
call it demonstrative evidence of negligence; for, although the
evidence must always be detailed by the mouths of witnesses,
yet when the facts are thus disclosed, they either demonstrate
negligence, conclusively, or tend to demonstrate it, subject to
explanation by the defendant, showing that his conduct was
consistent with due care.''  In this case, the defendant made
no effort to exonerate itself by proof of care, in the construc-
tion of its railway power line, to avoid injury to persons us-
ing the telephone lines or coming in contact with them.  It

put on the stand only a single witness, the farmer who disconnected the telephone wire from his house and threw it into the road, not to disprove negligence on its part, in the construction and operation of its lines, but only to prove negligence of the farmer, as the proximate cause of the injury. It may have elicited some of the facts above stated from the plaintiff's witnesses, by cross-examination, but there was no effort to prove the necessary element of safety in the eight inches of space between the trolley wire and the telephone wires, or lack of necessity of guard wires or other provisions against contact. It is perfectly obvious, therefore, that the defendant has not discharged the burden imposed upon it by the maxim above referred to, to such an extent as to preclude a jury from finding negligence on its part.

The remaining inquiry is, whether the evidence of an intervening negligent or wrongful act by Elias McWhorter, the farmer who disconnected the wire from his house and cast it into the public road, is so clear and conclusive as to make the question one of law for the court and withdraw it from jury consideration. As to the position of the wire in the road the testimony is not clear. Ordinarily, country highways are not subjected to travel throughout their entire width. There is a commonly used section bordered by unused portions on each side thereof. Neither the width of the road in question nor its condition as to travel, is shown. When McWhorter disconnected the wire from the house, it fell in the yard and he then removed it to the road, but does not say in what portion of the road he put it. He says he left it "along by the side of the road." Weekly, the man who was riding the horse when it came in contact with the wire says: "The horse was along the side of the road there and he stepped on the wire and fell." On cross-examination, he says: "It was run from one pole right out in the ground; right out in the road, along the road;" and again, "I never noticed but it was laying rather close to the pole, and there was something like 30, or 40, or 50 feet of it laying out in the road." About an hour and a half intervened between the time of McWhorter's act and the injury to the horse, amply sufficient for subsidence of any excitement under which he may have been laboring, when he

disconnected the wire and put it in the road. Though aware of the unusual and undue electrification of the wire and admittedly somewhat afraid of it, he handled it with his bare hands. Weekly, riding the plaintiff's horse, came to McWhorter's place to get a heifer the plaintiff had been pasturing in McWhorter's field. McWhorter talked with him, before he took the heifer from the field, but did not warn him of the presence of the wire in the road. When Weekly brought the heifer from the field, he found a train on the railway crossing, in consequence of which it became necessary for him to wait. After the departure of the train, he proceeded, and the horse came in contact with the unseen wire.

Though certain elements or ingredients are essential to the existence of legal negligence, they generally arise out of related facts and circumstances; wherefore the term negligence is one of relative significance which cannot ordinarily be defined by reference to any arbitrary rules. It is always a wrongful affirmative act or an omission of duty, but what is right conduct in either case depends upon the facts, circumstances and surrounding conditions. Under some circumstances, ignorance on the part of the person charged with a wrongful act or omission, excuses; and, under others, it does not. There are many illustrations of this principle. An experienced servant injured by the negligence of his employer may be barred of his right of action, by reason of his contributory negligence, while an inexperienced servant injured in the same way would be allowed to recover, on account of his lack of knowledge of the danger and means of avoiding it. What would be negligence in conduct affecting a sick person, a delicate woman, a lame man, or a child, might not be so in the case of a strong, mature, healthy person. *Bray* v. *Nathan*, 81 Ga. 140; *Huddleson* v. *Holiday*, 50 Neb. 229; *Cleveland &c. Railroad Co.* v. *Perry*, 8 O. S. 750; *Sleeper* v. *Sandown*, 52 N. H. 644; *Stanley* v. *Ceder Rapids Ry. Co.*, 119 Ia. 526; *Sheridan* v. *Brooklyn City Ry. Co.*, 36 N. Y. 39. A person injured by contact with an electric current may be excused or exonerated from the charge of contributory negligence, by reason of his lack of knowledge of electricity or the condition of the particular wire through which he was hurt. *Bice* v.

*Electrical Co.*, 62 W. Va. 685; *Griffin* v. *United Elec. L. Co.*, 164 Mass. 492. As negligence and contributory negligence are the same in general character, knowledge must necessarily be an essential element of negligence under circumstances which would make it so in contributory negligence. It is not the intention here to assert that ignorance always excuses, for there are many situations in which the ignorant person represents himself to be a person of skill or to have certain capacity. In such cases, his wrongful act could not be excused, on the ground of lack thereof. *Humphries* v. *Coal & Coke Co.*, 73 W. Va. 495; *Runyan* v. *Water & Light Co.*, 68 W. Va. 609; *Thornburg* v. *Railroad Co.*, 65 W. Va. 379.

Both of these principles seem to be applicable here, the latter to the defendant assuming to use, manage and control a powerful electric current, and the former to McWhorter, a farmer, not professing any particular or special knowledge of electricity, nor making any use of it except as furnished or supplied to him by others assuming to have the skill and knowledge necessary to proper and safe utilization thereof, and by means and methods provided by them. His vocation or calling negatives the possibility of a presumption of any thorough knowledge on his part of the mysterious and deadly force known as electricity, and his conduct on the occasion of his alleged negligent act tends very strongly to prove his ignorance thereof. He handled the fatal telephone wire with his naked hands. From this fact, it may readily be inferred that he did not know it was sufficiently charged to injure or kill. He knew, however, it would burn out his telephone or set his house on fire, because he had heard so or because he had seen the smoke escaping from his telephone. Though he says it was so dangerous that he took it out of the yard and that he was actually afraid to try to cut it, his conduct clearly showed lack of appreciation of the situation and its requirements. Moreover, it contradicts his subsequent interpretation thereof, on the witness stand, for he did cut the wire with a hatchet after it had killed the horse. As acts speak louder than words, a jury might consistently say he was mistaken in his assignment of the reason for not having severed the wire. If he had even suspected it was dangerous, he would

almost certainly have warned his neighbor of its presence in the road.

Whether McWhorter, almost wholly ignorant of the qualities and characteristics of electricity as the evidence proves, and called upon to make some disposition of an electrified wire endangering his house and family, omitted that degree of care and prudence, in doing so, which any other ordinarily intelligent, prudent and careful man, having no special knowledge of electricity, would have exercised, was clearly and undoubtedly a question for the jury.

Thus far we have assumed the correctness of the position that McWhorter's negligence, if established, would have barred recovery from the defendant. As it is unnecessary to say whether this position is sound or not, we decide nothing respecting it. As the defendant's current, negligently permitted to escape, continued throughout his act and beyond it, there may have been concurrent negligence, making either or both liable.

In view of the conclusion stated, it is apparent that, in our opinion, the court properly refused to give instructions virtually directing a verdict for the defendant and overruled the motion for a new trial. Nor did it err in giving instructions submitting to the jury the question of negligence on the part of the defendant.

Seeing no error in the judgment, we affirm it.

*Affirmed.*