W. A. HOLLEY *v.* PURITY BAKING COMPANY

(No. 9759)

Submitted January 29, 1946. Decided March 5, 1946.

*Brown, Jackson & Knight, John C. Morrison* and *W. T. O'Farrell,* for plaintiff in error.

*Salisbury, Hackney & Lopinsky, Orville Hackney* and *Samuel D. Lopinsky,* for defendant in error.

RILEY, JUDGE:

W. A. Holley, plaintiff, instituted in the Court of Common Pleas of Kanawha County this action of trespass on the case against Purity Baking Company, a corporation, to recover for personal injuries alleged to have been sustained by him as the result of eating a portion of a cake made by defendant, in which a small piece of wire was imbedded. The Common Pleas Court entered a judgment for plaintiff in the amount of thirty-five hundred dollars, based upon a jury verdict, to which judgment the Circuit Court of Kanawha County refused a writ of error. The instant writ of error is prosecuted to the judgment of the said circuit court.

On September 11, 1944, plaintiff and his wife bought certain groceries at a store in Charleston, at which they were accustomed to deal. Among the items purchased, there was a cake, bearing defendant's name and label, which, so the record substantially shows, had been made by defendant in its baking plant and sold to the grocery for retail trade. The record discloses that from the time the cake was taken to plaintiff's home until it was served on the evening of the alleged injury, it was kept in a utility cabinet in plaintiff's kitchen, during which time the cellophane wrapper, which entirely covered the cake, remained intact. On the day following its purchase, while eating a portion of the cake during the course of the evening meal at his home, plaintiff felt "something like a pin stick me and I coughed the cake up in my hand and when I did that I seen a little piece of wire." Plaintiff threw the wire and cake which he had removed from his mouth into the yard. The wire is variously described as being about the size of, or a little heavier than, that of an ordinary window screen wire, and when removed from plaintiff's mouth seems to have been bent.

On the day after the alleged injury, plaintiff's throat began to get sore. His condition became worse, and he consulted Dr. H. M. Mican of Charleston, who advised hospitalization. Plaintiff was then taken in an ambulance to the Charleston General Hospital, where he remained for fourteen days. For two or three days while there, he was unable to swallow, his neck was greatly swollen, and for a time it was necessary to feed him intravenously. Finally, his throat became abscessed near the left side of the jaw, and an operation was performed and the abscess drained.

Dr. Mican testified that, in his opinion, the infection was caused by the tissues of the throat having been punctured by a foreign object "which carried the germ into the deeper structures of the neck". Defendant's witness, Dr. O. H. Bobbitt, an eye, ear, nose and throat specialist, who made no examination of plaintiff during

the course of his illness, testified on defendant's behalf that infections may be caused, without trauma, from bacteria in the throat.

As a result of the operation plaintiff has a scar on the left side of his throat. From Dr. Mican's testimony it appears that infection caused plaintiff to become "very sick". From his testimony and that of plaintiff, it clearly appears that during the course of the illness plaintiff suffered great pain. The record contains substantial evidence to the effect that since the injury plaintiff experienced hoarseness, which interferes with his talking and singing, and plaintiff testified, without contradiction, that he has "pains every now and then that shoots through" his throat. Hospital and medical expenses in the respective amounts of $95.26 and $94.00 were proved, and proof was made of loss of wages in the amount of $280.00 to $300.00, though this latter item is not declared upon in plaintiff's declaration.

Two assignments of error are asserted here: (1) The giving of plaintiff's instruction No. 1, and (2) the verdict was excessive.

Plaintiff's instruction No. 1 told the jury, among other things, that if it should believe from a preponderance of the evidence "that at the time said cake was taken from said cellophane wrapper, that said cake contained a small metallic substance, as testified to by said plaintiff, and that the plaintiff suffered injuries as testified to by him, as the proximate result of his attempting to eat a piece of said cake, which contained said small metallic substance, the *prima facie* presumption of law is that said defendant was guilty of negligence, and you should find for the plaintiff, unless you believe that the said defendant has overcome, by competent evidence, said presumption of negligence, or unless you find from the evidence that the plaintiff was guilty of negligence which proximately contributed to his own injury if any". Defendant objected to the giving of this instruction on the ground that the presence of a foreign object in the cake

is sufficient to allow the jury to draw the inference that defendant was negligent, but is not *"prima facie* evidence of negligence on the defendant's part."_ Plaintiff cites *Parr* v. *Coca Cola Bottling Works of Charleston,* 121 W. Va. 314, 3 S.E. 2d 499; *Blevins* v. *Raleigh Coca-Cola Bottling Works,* 121 W. Va. 427, 3 S.E. 2d 627, in support of the trial court's action in giving plaintiff's instruction No. 1, and defendant, in support of its objection to the instruction, relies upon the holding of this Court in *Webb* v. *Brown & Williamson Tobacco Co.,* 121 W. Va. 115, 2 S.E. 2d 898, and contends that the *Parr* and *Blevins* cases are inconsistent with the decision in the *Webb* case. In this regard it is to be noted that in point 1 of the syllabus in the *Parr* case, the Court held the proof that the bottling company caused a bottle of "Coca-Cola", containing harmful substance to be sold through a distributor, which was consumed by the purchaser resulting in his injury, "gives rise to a *prima facie* presumption of negligence on the part of the bottling company and it is for the jury to determine whether, under all the circumstances, proof of a careful bottling system followed by the defendant company, which does not single out the specific article distributed and consumed, meets the presumption so arising." While at page 119 of Volume 121, West Virginia Reports, in the *Webb* case, this Court said: "Here we have a case where, without the evidence introduced in behalf of the defendant in the court below, the doctrine of *res ipsa loquitur* would apply; but that doctrine does nothing more than warrant certain inferences from established facts, and testimony tending to show a different state of facts from those out of which the inference grew changes the situation". It is on the basis of these two quotations from the above cases that counsel for defendant contends here that the decisions are inconsistent and that the holdings of this Court in the *Parr* and *Blevins* cases are erroneous, and therefore plaintiff's instruction No. 1, based, as it is, upon such holdings, is erroneous.

Upon reexamination we find that the reasoning of this Court in the opinion in *Parr* v. *Coca-Cola Bottling*

*Works, supra,* was based upon the holding in *Webb* v. *Brown & Williamson Tobacco Co., supra.* Both cases involved the alleged liability of the manufacturer to an ultimate consumer. In the opinions in both cases the defendants were held liable upon the theory of the doctrine of *res ipsa loquitur.* In the *Parr* case the Court, in disposing of the second assignment of error therein that the doctrine of *res ipsa loquitur* was erroneously applied, said that this, as well as the first assignment of error, is "disposed of by this Court's holding in" the *Webb* case. The following statement appears in the *Webb* case: "The jury had the right to believe that the system used by the manufacturer was not sufficient to prevent the presence of a foreign substance in the manufactured product involved in this case. Realizing the difficulties surrounding our decision, we hold that the question of negligence was one for jury determination, and that on the question of liability of the manufacturer, its verdict cannot be disturbed." After using the foregoing quotation, the *Parr* opinion continues with the observation: "This, we think, disposes of the question of negligence and the question of applying the doctrine of *res ipsa loquitur.*" But in the *Webb* case this Court held that the doctrine of *res ipsa loquitur* "does nothing more than warrant certain inferences from established facts"; while in point 1 of the syllabus of the *Parr* case the Court held that the proof of the presence of a deleterious substance in a bottle of Coca-Cola gave rise to "a *prima facie* presumption of negligence on the part of the bottling company", and it was for the jury to determine whether proof of a careful bottling system which did not single out the specific article consumed "meets the presumption so arising." So it seems to us upon this reappraisement of the two cases that point 1 of the syllabus in the *Parr* case is inconsistent with the position which this Court took in the *Webb* case.

By our holdings in the *Webb*, *Parr* and *Blevins* cases, we are committed to the proposition that the doctrine of *res ipsa loquitur* should be applied to an action by the

ultimate consumer against a manufacturer of products designed for human consumption, to recover for alleged injuries caused by the presence of deleterious or harmful matter in the product. The decision in the *Webb* case differs from the decisions in the *Parr* and *Blevins* cases only in that this Court gave a different effect to the application of *"res ipsa loquitur"*... This diversity in our own decisions represents a diversity in the authorities in other jurisdictions. Many American courts have entertained the view that *"res ipsa loquitur"* is a presumption, and many others have held the contrary view, that is, that *"res ipsa loquitur"* is a mere permissive inference. For a collation of authorities, see note to *Glowacki* v. *Northwestern Ohio Railway & Power Co.*, 116 Ohio St. 451, 157 N.E. 21, 53 A.L.R. 1486, Note 1494- 1519, inclusive. It may be as stated in 38 Am. Jur., Negligence, Section 309: "In many instances the courts, in considering the application and effect of the doctrine of res ipsa loquitur, speak of a prima facie presumption of negligence arising from the occurrence and the circumstances surrounding it. And many of them say that when the doctrine of res ipsa loquitur applies, a presumption of negligence is raised, or that such a presumption is raised unless the occurrence is explained. But it is evident that these courts mean nothing more than that the circumstances furnish evidence from which the jury may find or infer negligence, which, if not explained, or not explained satisfactorily, will support a verdict for the plaintiff. * * *". Be that as it may, we are now of the opinion that the position which this Court took in the *Webb* case presents the better view. In *Diotiollavi* v. *United Pocahontas Coal Co.*, 95 W. Va. 692, 699, 122 S.E. 161, this Court in holding that the doctrine of *res ipsa loquitur*, if applicable, would not relieve the plaintiff in that case from carrying the burden of proof as to the negligence of defendant, cited *Sweeney* v. *Erving*, 228 U. S. 233, 33 S. Ct. 57 L. ed. 815, in which the Supreme Court of the United States said: "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negli-

gence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." In Jones on Evidence, 2d Ed. Vol. II, page 936, cited with approval in the *Webb* case, it is stated: "This indirect method of arriving at the negligence of defendant is generally expressed by the maxim, 'res ipsa loquitur', which, literally translated, means 'the thing speaks for itself', and is merely a short way of saying that the circumstances attendant upon the accident are themselves of such a character as to justify a jury in inferring negligence as the cause of the injury. It in no wise modifies the general doctrine that negligence is not presumed." See *Stanolind Oil & Gas Co.* v. *Bunce,* 51 Wyo. 1, 62 P. 2d 1297; *Zahniser* v. *Pennsylvania Torpedo Co.,* 190 Pa. 350, 42 A. 707; and *Glowacki* v. *Northwestern Ohio Railway & Power Co., supra.*

For these reasons we think that point 1 of the syllabus in the *Parr* case, as well as the syllabus and opinion in the *Blevins* case, should be modified to conform with the holding of this Court in the *Webb* case.

Plaintiff's instruction No. 1, we think is erroneous for the foregoing reasons, and for the further reason that it tells the jury, in effect, that if it should believe from a preponderance of the evidence that at the time "said cake was taken from said cellophane wrapper, that said cake contained a small metallic substance, * * * and that the plaintiff sustained injuries * * * as a proximate result of his attempting to eat a piece of said cake", there is a "prima facie presumption *of law*" that

said defendant was "guilty of negligence." (Italics supplied). A *prima facie* presumption, as suggested in the *Parr* case, does not, where the presumption is met and overcome by evidence, preclude jury determination; but a presumption of law is a rule of law that a particular inference shall be drawn by a court or jury from a particular circumstance. *State* v. *Dodds*, 54 W. Va. 289, 46 S.E. 228. A presumption of law, unlike a presumption of fact, cannot be rebutted. *Hamilton & Co.* v. *Steele*, 22 W. Va. 348, 354. Such a presumption is beyond the province of the jury when the facts which give rise to it have been proved to the satisfaction of the trial court or the jury, depending upon whether the evidence tending to establish said facts is without conflict, or conflicts with that tending to disprove them.

As a new trial will be had, we do not reach defendant's second assignment of error, that the verdict is excessive.

For the foregoing reasons the judgments of the Common Pleas and Circuit Courts are reversed, the verdict set aside, and a new trial awarded.

> *Judgments reversed; verdict set aside; new trial awarded.*

KENNA, PRESIDENT, concurring:

With the utmost deference, I cannot but be impressed by the fact that the majority in taking its position that the doctrine of *res ipsa loquitur* does not raise a *prima facie* presumption of negligence has been unduly influenced by merely persuasive decisions from other jurisdictions and the professorial reasoning of recent texts, without realizing the breadth and depth to which the exact contrary is rooted in West Virginia precedent.

The first West Virginia case in which the doctrine

was dealt with by name is that of *Snyder* v. *Wheeling Electrical Co.* (1897), 43 W. Va. 661, 667, 28 S. E. 733, the opinion written by Judge Brannon. The case involved death by electrocution from coming in contact with a fallen live wire. In the course of the opinion Judge Brannon quoted with approval from 16 Am. & Eng. Enc. Law, p. 448, as follows: "As a rule, negligence is not presumed. But there are cases where the maxim, *'res ipsa loquitur,'* is directly applicable, and from the thing done or omitted negligence or care is presumed." The third syllabus, in speaking of the doctrine, says: "* * * it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

The *Snyder* case was cited in *Veith* v. *Salt Co.* (1902), 51 W. Va. 96, at page 99, 41 S. E. 187, and the rule laid down therein referred to by Judge Brannon as creating a *prima facie* presumption of negligence. The principle was not applied in the *Veith* case because the facts did not warrant it.

The principle enunciated in West Virginia by the *Snyder* case has been either followed as a point of decision or referred to with approval in the following West Virginia cases: *Mannon* v. *Railway Co.* (1904), 56 W. Va. 554, 556, 49 S. E. 450, (railroad case, opinion by Judge Dent); *Bice* v. *Wheeling Electrical Co.* (1907), 62 W. Va. 685, 691, 59 S. E. 626, (live wire case, opinion by Judge Miller); *Runyan* v. *Water & Light Co.* (1910), 68 W. Va. 609, 611, 71 S. E. 259, (live wire case, opinion by Judge Brannon; *Humphreys* v. *Coal & Coke Co.* (1914), 73 W. Va. 495, 500, 80 S. E. 803, (live wire case, opinion by Judge Poffenbarger); *Edmonds* v. *Traction Co.* (1916), 78 W. Va. 714, 717, 90 S. E. 230, (live wire case, opinion by Judge Poffenbarger); *Lindamood* v. *Light & Power Co.* (1919), 85 W. Va. 85, 91, 100 S. E. 868, (wire case, opinion by Judge Poffenbarger); *Jankey* v. *Gas Co.* (1925), 98 W. Va. 412, 417, 127 S. E. 199, (gas case, opinion by Judge Hatcher); *Laurent* v. *Gas*

*Co.* (1926), 101 W. Va. 499, 511, 133 S. E. 116, (gas case, opinion by Judge Lively) ; and *Martin* v. *Appalachian Electric Power Co.* (1930), 109 W. Va. 129, 134, 153 S. E. 245, (live wire case, opinion by Judge Woods). *Thomas* v. *Traction Co.* (1922), 90 W. Va. 681, 112 S. E. 228, (railroad case, opinion by Judge Ritz), while not citing the *Snyder* case, adheres to the same rule, as does *McLaughlin* v. *Railroad Co.* (1914), 75 W. Va. 287, 289, 83 S. E. 999. An examination of the first syllabus in *Jacobs* v. *Railroad Co.* (1911), 68 W. Va. 618, 70 S. E. 369, of the second syllabus in the *Runyan* case, of the second syllabus in the *McLaughlin* case, of the second syllabus in the *Thomas* case, and of the first syllabus in the *Jankey* case, cited above, I believe will be sufficient to demonstrate that the doctrine of *res ipsa loquitur* has been repeatedly held to give rise to a rebuttable presumption of negligence in West Virginia. No West Virginia case, including the majority opinion in the case at bar which does not refer to it nor to one of the cases above cited, has commented adversely on the *Snyder* opinion.

In *Jankey* v. *Gas Co.* (1925), 98 W. Va. 412, 127 S. E. 199, the first point in the syllabus reads as follows:

> "The rule of *res ipsa loquitur* as defined in *Snyder* v. *Wheeling Electric Company*, 43 W. Va. 661, *Bice* v. *Wheeling Electrical Company*, 62 W. Va. 582, and in *Jones* v. *Bridge Company*, 70 W. Va. 374, followed and applied."

In the opinion, prepared by Judge Hatcher, the following language from the *Bice* case is approved:

> "In a case of negligence where the rule of *res ipsa loquitur* is applicable * * * the rebuttable presumption of negligence retains its original force until overcome by proof of affirmative acts of due care of the defendant."

In *Runyan* v. *Kanawha Water & Light Company* (1910), 68 W. Va. 609, 71 S. E. 259, the second syllabus reads as follows:

> "If a person, at a place where he has right
> to be, is injured by contact with an electric light
> wire, there is a *prima facie* presumption that
> the wire was not properly insulated, which
> presumption, unless rebutted, will establish
> negligence in the owner of the wire in failing
> to have a properly insulated wire."

In the opinion Judge Brannon uses the following language: "* * * But beyond this the doctrine of *res ipsa loquitur* proves negligence *prima facie*, and aids the oral evidence. Our cases surely apply this rule in such cases, holding when injury comes to a person by contact with an electric wire at a place where he has a right to be, and where there should be good insulation, it is a case of negligence rendering the company *prima facie* liable. We need not go over this principle again."

In *Jacobs* v. *Railroad Co.* (1911), 68 W. Va. 618, 70 S. E. 369, the first syllabus reads as follows:

> "In an action against a railroad company
> for destruction of a house by fire alleged to
> have started from sparks from a locomotive,
> the burden is on the plaintiff to prove that the
> fire started from a spark; but when that has
> been proven, a presumption arises that the com-
> pany was negligent, which presumption it must
> repel by disproving negligence."

The rule in Virginia is the same. *Murphy's Hotel, Inc.* v. *Cuddy's Administrator* (1919), 124 Va. 207, syllabus Point 2, 97 S. E. 794.

It is of course true that the decided cases from other jurisdictions are not binding upon this Court concerning the application of the doctrine of *res ipsa loquitur*. Some attempt to distingush between an inference and a rebuttable presumption, a few holding that an inference can be met as a matter of law by the defendant, others that the proof of the defendant and of the plaintiff where an inference, as distinguished from a presumption, is raised, must be submitted to the jury, but nearly all agree that if the doctrine creates a rebuttable presumption the proof of both the plaintiff and the de-

fendant must be submitted to a jury. . The difference, in effect, of an inference and of a rebuttable presumption seems to be that an inference of negligence in cases where the defendant offers no evidence would not entitle the plaintiff to a directed verdict, but that the case must go to the jury, whereas, if the doctrine raises a *prima facie* presumption, in a case where the defendant offers no evidence the plaintiff is entitled to a directed verdict. In that situation the quantum of damages, of course, is a jury question, although the right of recovery is decided by the court. I believe that I have shown that West Virginia is strongly committed to the latter doctrine treating *res ipsa loquitur* as raising a presumption of law, as distinguished from one of fact, buttressed, at least in foodstuff cases, by a substantial public policy, as I attempted to state in my concurrence in the case of *Webb* v. *Brown & Williamson Tobacco Co.,* 121 W. Va. 115, 2 S. E. 2d 898.

In *Diotiollavi* v. *Coal Co.,* 95 W. Va. 692, 122 S. E. 161, cited in the majority opinion, the doctrine of *res ipsa loquitur* was not applied nor was there anything concerning it cited in that case, the Court simply saying, probably by way of *dicta,* in the course of its opinion that the doctrine would not relieve the plaintiff from carrying the burden of proof as to the negligence of the defendant.

In quoting from *Sweeney* v. *Erving,* 228 U. S. 233, 57 L. Ed. 815, the majority opinion does not comment upon the fact that the *Sweeney* case was decided in 1912 and was followed in this State by the *Humphreys* case, the *Edmonds* case, the *Lindamood* case, the *Jankey* case, the *Laurent* case and the *Martin* case, all taking the contrary point of view. The Virginia case of *Murphy's Hotel, Inc.,* v. *Cuddy's Admr.,* (1919) 124 Va. 207, 97 S. E. 794, also followed in time the *Sweeney* case. The *Sweeney* case went to the Supreme Court from the District of Columbia where possible conflict between State and Federal decisions does not arise. Of course, our own

decisions have always controlled in our own courts, but now since *Erie Railroad Co.* v. *Tompkins* (1938), 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, overruling *Swift* v. *Tyson*, 16 Pet. 1, the Federal Courts abide by our decisions in cases arising within this State. It is rather awkward to follow their reasoning at a time they are, in principle, following ours.

In the case of *Webb* v. *Tobacco Co.*, 121 W. Va. 115, 2 S. E. 2d 898, the Court held that the doctrine of *res ipsa loquitur* gave rise to an inference of negligence but that the defendant's proof of an extremely careful system could not, as a matter of law, overcome that inference, and that the jury had a right to believe that the system was not sufficient to prevent the presence of a foreign substance in its chewing tobacco. The plaintiff's witnesses had sworn that the substance was there. The Court's opinion, in effect held that proof of a high degree of care did not, as a matter of law, overcome the effect of the doctrine of *res ipsa loquitur*, called an inference in the Court's opinion in spite of the fact that the doctrine had been treated as creating a presumption in the above referred to West Virginia cases decided before the *Webb* case. I was not in accord with the Court's reasoning in the *Webb case*, and filed a concurring opinion in which I attempted to direct attention to the fact that applying the *res ipsa loquitur* doctrine to a manufacturer or packer of foodstuff sold to the consumer in the original sealed package, the contents of which injured him, is unnecessarily resorting to a legal principle difficult of application, and with the same practical result that would be brought about by applying the doctrine of an implied warranty on the part of the packer, which I favored. The Court, however, thought differently. I believed, and still believe, that as a matter of sound, and in this day of mass production, necessary, public policy the law applicable to the manufacture, packing and distribution of foodstuff should be made as simple and direct as possible because the health of the people is vitally involved.

In the case of *Parr* v. *Bottling Works,* 121 W. Va. 314, 3 S. E. 2d 499, the question of whether the rule of *res ipsa loquitur* creates merely an inference or gives rise to a rebuttable presumption was before the Court, and in the first syllabus this Court plainly declared, without calling the doctrine by name, that it does give rise to a *prima facie* presumption, following the line of West Virginia cases then thought to be too well known to require citation.

The *Parr* case was followed by *Blevins* v. *Bottling Works,* 121 W. Va. 427, 3 S. E. 2d 627, the first syllabus of which cites and approves Point 1 of the syllabus of the *Parr* case. In the *Blevins* case exactly the same point was argued and submitted as in the *Parr* case and as in this case, with the result that the Court, as then constituted, adhered to the rule of rebuttable presumption rather than to adopt a theory which I, with all respect, regard as highly artificial and, from a practical point of view, thoroughly unsound. Those who wish to examine the confusion in the decided cases that distinguish presumptions of fact from inferences and discuss the question of whether a presumption constitutes evidence, may do so by referring to the following annotations: 53 A. L. R. 1494 and 95 A. L. R. 878. See also Jones on Evidence (2nd Ed.) 69.

With every regard for the majority, in my opinion they have plainly overlooked the rule of *stare decisis* spoken of by Judge Johnson for the Court in *Clarke* v. *Figgins* (1886), 27 W. Va. 663, 672, as follows:

"* * * The common law was only builded into a magnificent structure by the fathers laying a broad foundation, and the judges who followed them, being careful that every successive stone placed upon the foundation should not be different from those already laid. Thus we see harmony in the building throughout. If a different course had been pursued, and hasty and ill-advised decisions made without regard to the precedents, the common law instead of showing symmetry in its perfection would be one in-

congruous mass, and no one could form any idea how a matter would be decided, as in each case the judge would decide according to his own peculiar notion of what in that particular case might be right; and we know, that it is often true, that what one would consider right in the particular case another would regard as wrong. Nothing keeps a judge so strictly in the line of his duty, as the feeling and constant realization of the fact, that he is bound by precedents. He knows, that his opinion will be by the legal profession with all its astuteness subjected to the severest criticism, and if he dares to depart on a given question from the well marked line of precedents, either his ability or integrity is in great danger of being impugned. There is too much clamor in this day to be governed less by precedents and to decide as each judge may think right in the particular case, and the reason given is, that the law as laid down by the precedents is uncertain. The only cause of its uncertainty is that some courts in the hurry of business have rendered hasty decisions, without that consideration which ought to have been given to them, and perhaps have not cited a single authority, and then another judge or court in a great hurry has cited that case as an authority for another bad decision. It is only safe to know how the question has been settled, if settled at all, and then not depart from the rule; and if it has not been settled, to settle it after a thorough examination of the principles, upon which it must rest."

Judge Lovins authorizes me to say that he concurs in this memorandum. We do not dissent from the third syllabus in the main opinion and therefore concur in a reversal for that reason only.