# CHARLESTON.

## JONES *v.* RIVERSIDE BRIDGE COMPANY.

Submitted June 11, 1910.   Decided February 13, 1912.

1. NEGLIGENCE—*Care Required.*
   A contractor, having servants at work in the erection of a building along with the servants of another contractor, owes to the latter the duty of care for their safety.   (p. 377).

2. SAME—*Res Ipsa Loquitur.*
   If, in such relation, a servant of one of the contractors is injured, under circumstances, creating a reasonable probability that the injury was caused by the omission of such duty on the part of the other or the negligence of his servants, the maxim, *res ipsa loquitur*, applies, making the circumstances, without more, evidence of negligence.   (p. 376).

3. SAME—*Question for Jury.*
   Ordinarily, such circumstantial evidence is not conclusive of the question of negligence and only suffices to carry the issue to the jury and sustain a verdict for the plaintiff, if found.   (p. 379).

4. TRIAL—*Instructions—Duty of Court.*
   If it affords bases for inferences favorable to each of the parties, the court, upon request therefor, must give instructions submitting the hypotheses such inferences appreciably tend to sustain.   (p. 379).

(ROBINSON and WILLIAMS, JUDGES, dissent).

Error to Circuit Court, Ohio County.

Action by James M. Jones against the Riverside Bridge Company.   Judgment for plaintiff and defendant brings error.

*Revised and New Trial Awarded.*

*Hubbard & Hubbard,* for plaintiff in error.

*Noyes & Ritz* and *John A. Ritz,* for defendant in error.

POFFENBARGER, JUDGE:

On this writ of error to a judgment for $1,016.67, the amount of a verdict rendered, the sufficiency of the evidence to sustain the verdict was raised by a request for a peremptory instruc-

tion to find for the defendant. The principle, governing the disposition of the assignment of error founded upon the refusal of that instruction, will solve most of the other questions presented.

The plaintiff below was injured by the fall of a board, while employed in and about the work of constructing a building, several stories high, in the city of Wheeling. The action was not brought against his employer nor the owner of the building, but against a contractor engaged in the installment of the steel work of the building. The servants of the structural iron company, the defendant, were placing a steel beam or girder for the fourth floor of the building, and the plaintiff, employed by the brick work contractor, was in the basement, handling some pieces of terra cotta, when he sustained the injury. Just what he was doing at the instant of the fall of the board does not appear, but he was on duty in the basement. Another servant of his employer was hauling the terra cotta to the front of the building and sliding it into the basement and he was carrying or wheeling it back from the front. Who let or caused the board to fall is not expressly shown. Nothing in this connection is disclosed except that it came from the fourth floor and that, at that time, the servants of the defendant company were working on that floor, or rather where it was intended to be. One witness says, "They were throwing in a beam; getting ready to place one. * * * * They were adjusting this platform on the fourth floor. They had boards laid around." Another witness says it came from "upon top somewhere," and that a gang of bridge men were working where it came from. Another witness says it came from about the fourth tier of iron or the ceiling of the third floor and that the structural iron workers were working on that floor. No witness states specifically that any other persons were on that floor, but one witness said, responding to a question as to whether any persons were working between the fourth floor and the first: "Yes, sir, they was working all over the floors." The defendant company had its hoisting engine in the basement, and, for about 12 feet back from the street, no flooring of any kind had been put in for any of the stories. Back of the 12 foot space, some fire proofing had been laid on some of the floors, but how much space was so cov-

ered is not shown. In this 12 foot space at the front of the build-
ing, there seems to have been nothing to break or prevent the
fall of any object and the board by which the plaintiff was in-
jured seems to have come down through it. This open space or
some other was no doubt needed for the work of hoisting mate-
rials. Some testimony was adduced to the effect that, under such
conditions, the contractor putting in the steel work does not lay
any ffoors below the workmen to prevent tools and materials
from falling, even though other persons are working below, and
that such articles frequently fall in the course of the work.

The trial court disposed of the case upon the theory that the
lack of evidence, showing just how the board happened to fall,
is aided by a presumption or inference of negligence, which the
jury might draw, under the rule *res ipsa loquitur,* applied in
several cases by this Court, notably *Bice* v. *Electrical Co.,* 62 W.
Va. 685, and *Snyder* v. *Electrical Co.,* 43 W. Va. 661. The
argument against the application of this doctrine is based largely
upon the definition of the rule or doctrine stated in the syllabi
of the two cases just cited, embodying certain specifications of
conditions under which it is applicable, and the assumption
that every case falling under the principle must come within
those specifications. Accordingly it is said the agency causing
the injury must be definitely known, and appear to have been
under the management and control of the defendant, and the oc-
currence such as, in the ordinary course of things, does not hap-
pen, if proper care is used by those who have the management.
The language of this Court thus relied upon, does not purport
to be a general definition of the rule. It is rather an application
of the rule to the particular facts and circumstances of the
cases. The principle is broader. "When the physical facts
of an accident themselves create a reasonable probability that it
resulted from negligence, the physical facts themselves are evi-
dential, and furnish what the law terms evidence of negligence
in conformity with the maxim, *'res ispa loquitur'* ". *Seybott*
v. *Railroad Co.,* 95 N. Y. 562, quoted in *Snyder* v. *Electrical Co.*
"I have ventured to call it demonstrative evidence of negligence;
for, although the evidence must always be detailed by the mouths
of witnesses, yet when the facts are thus disclosed, they either
demonstrate negligence, conclusively, or tend to demonstrate it,

subject to explanation by the defendant, showing that his conduct was consistent with due care." 1 Thomp. Neg., sec. 15, p. 16. "Where an accident itself, with all its surroundings, speaks in such way and is of such character as to show negligence on the part of the defendant, the doctrine *res ipsa loquitur* applies and the plaintiff is allowed to recover in the absence of other proof." *Wood* v. *Railway Co.,* 64 Atl. Rep. 246. However, we perceive no difficulty in applying the terms of the supposed definition to the facts here disclosed. The board was the agency causing the injury. Ordinarily, a board is not a dangerous article, but, under given circumstances, it may be very dangerous. If a board be insufficiently suspended or fixed over a street or walk for some purpose so that it may fall upon a pedestrian passing under it, it is a dangerous agency and is under the management or control of him who maintains it there in an insecure condition. So a board in the hands of a workman at the top of a four-story building is a dangerous agency to other persons passing under it in the discharge of their duties. Owing to the peculiar circumstances and the very great danger of injury in case it should fall, a very high degree of care is exacted on the part of him who holds it, just as in the case of one who erects or constructs a fixture over a road or passage way, likely to be used by travelers or other persons. The duty imposed under such circumstances is so great that ordinarily it is not omitted and injury does not result. Hence, when injury does result, there is a probability of omission of the care, prudence and diligence exacted by law. Instances of the application of the doctrine are given in *Snyder* v. *Electrical Co.* as follows: "*Mulcairns* v. *City of Janesville,* 67 Wis. 24, (29 N. W. 904),—wall of a cistern falling; *Dixon* v. *Pluns,* 98 Cal. 384, (33 Pac. 268),—chisel falling from a scaffold; *Houston* v. *Brush,* 66 Vt. 331, (29 Atl. 380),—injury from being struck by a wheel from a tackle block, attached to a derrick; note in *Railroad Co.* v. *Anderson,* (Md.) 20 Am. St. Rep. p. 493 (s. c. 20 Atl. 2); *Thomas* v. *Telegraph Co.,* 100 Mass. 156,—telegraph wire swinging over a street too low, so as to obstruct travel; *Clare* v. *Bank,* 1 Sweeney, 539,—injury from plank falling from one's premises; *Howser* v. *Railroad Co.,* (Md.) 30 Atl. 906,—cross-tie falling from a moving car; *Ugla* v. *Railway Co.,* (Mass.) 35 N. E.

1126; *Morris* v. *Strobel* & *Wilken Co.,* 81 Hun. 1 (30 N. Y. Supp. 571),—sign board falling in street." Application of the doctrine in cases of the class to which the one now under consideration belongs will be found in *Guldseth* v. *Carlin,* 19 App. Div. Rep. (N. Y.) 588; *Reilly* v. *Construction Co.,* 83 Hun. 196; *Thrussell* v. *Handyside,* L. R. 20 Q. B. D. 359; and *Sheridan* v. *Foley,* 58 N. J. L. 230.

As to whether the board working the injury complained of was under the management or control of the defendant's servants, the evidence is not direct and positive, as will appear from the statement already given. It is readily inferable, however, from the facts stated. Defendant's servants were working at the point or place from which the board fell and using boards in connection with their work. No reason is perceived why evidence sufficient to sustain a finding by the jury that the agency working the injury was under the control of the defendant should not suffice to establish the facts as in other cases. It is a question for the jury rather than for the court. We do not understand the rule to require conclusive evidence of control or management of the agency by the defendant.

The declaration fully sets forth the facts and circumstances, here stated, and specifies the means or agency by which the injury was inflicted, charging it to have been negligently done. This makes it clearly good under our decisions, and the surplusage therein, if any, does not vitiate it. So the demurrer was properly overruled.

Exception was taken to the action of the court in giving three of the plaintiff's instructions, under the impression that they assumed certain facts. One of these stated the duty of the defendant to exercise care for the safety of the men known to be working in the basement of the building and afford the plaintiff reasonable protection "from objects caused to fall from the fourth floor by the negligence of the agents, servants and employes of the defendant." Another stated the duty of the defendant to give the plaintiff reasonable warning "of the objects caused to fall from the fourth floor by its servants, agents or employes." These instructions did not assume that the defendant's servants caused the board inflicting the injury to fall. They stated the duty of the defendant under the circumstances dis-

closed by the evidence. Not mentioning the board which caused
the injury, they stated the general duty of the defendant to
take precaution against injury from falling objects. We do not
think the jury could have considered the language used as im-
porting that the defendant's servants had caused the board to
fall. The other instruction complained of allowed the jury to
consider the health and condition of the plaintiff before the
injury as compared with his "condition in consequence of said
injury" at the time of the trial. All the evidence adduced re-
lating to the plaintiff's physical condition at the time of the trial
tended to show a continuance of the effect of the injury he had
received. Nothing was adduced in contradiction thereof. He
proved it by his own testimony and that of a physician. The
assumption in the instruction is the relation of his condition to
the injury, not the extent of the impairment of health or
physical capacity. As to the latter, nothing was taken from
the jury. As the fact assumed is sustained by direct, positive
and uncontradicted evidence, we perceive no error in the assump-
tion thereof.

Six several instructions, propounding inquiries as to whether
the defendant had exercised reasonable care for the safety of
the plaintiff and whether the latter had assumed the risk of in-
jury in the manner in which it occurred or the injury was acci-
dental, were requested by the defendant and refused by the court.
In thus disposing of these requests, the court must have con-
sidered the evidence conclusive on the question of liability or
as having established a legal presumption of negligence, preclud-
ing inquiry as to accidental injury or assumption of risk. This
is a misapprehension of the effect of the rule. Under it, the evi-
dence only carries the case to the jury, as sufficing to justify
an inference of negligence. *Duhme* v. *Packett Co.*, 184 N. Y.
404; *Griffen* v. *Manice*, 166 N. Y. 188; *Ross* v. *Cotton Mills*,
140 N. C. 113, 1 L. R. A. (N. S.) 298; *Judson* v. *Powder
Co.*, 107 Cal. 549. The rule is a mere application of the law of
circumstantial evidence. The evidence goes to the jury for such
inferences as may arise out of the facts disclosed, and each party
is entitled to instructions, submitting the hypotheses in his
favor for which any basis is found in the evidence. Our own
cases as well as the definitions of the rule found elsewhere say

no more than that the circumstances constitute evidence, tending to prove negligence. Both the *Snyder* and *Bice Cases* say the facts, unexplained, afford "reasonable evidence" that the injury arose from want of due care, not that they are conclusive, inhibiting any other theory. There may be, and no doubt are, cases in which the circumstances are conclusive, allowing only one inference, and so precluding instructions favorable to the defendant, but this evidence is not of that character. If there is a contractual relation, as between passenger and carrier, the circumstances unexplained are generally conclusive, when sufficient to take the case to the jury, but this case involves no breach of contract. Here a witness says men were working all over the floors. Boards were placed on the beams on all the floors to enable workmen to get around over them. Another says bricks and other objects were falling frequently. The plaintiff himself says he would have been out of danger had he stepped four or five feet in one direction, instead of running twenty feet in another. Another witness says the defendant was conducting its work in the customary manner, and all agree that warning was given when the board fell. Under all these circumstances, we are unable to say there was no basis in the evidence for an inference of assumption of risk or accidental injury. The request for these instructions did not challenge the sufficiency of the evidence to sustain a verdict for the defendant. It only asked the court to say whether there was any evidence of any kind appreciably tending to sustain the hypotheses, embodied in the instructions. *Newhouse* v. *Railroad Co.,* 62 W. Va. 562; *State* v. *Clifford,* 59 W. Va. 1. No peremptory instruction to find for the plaintiff was asked. Upon these principles, we think the court erred in refusing defendant's instructions Nos. 4, 5, 6, 7, 8 and 9.

Defendant's instruction No. 10, requiring the jury and each member thereof to believe the defendant liable beyond a reasonable doubt, as requisite to a verdict for the plaintiff, was properly overruled. Ordinarily, the reasonable doubt rule does not apply to civil cases. *Simmons* v. *Insurance Co.,* 8 W. Va. 474. There are exceptional cases in which it does apply. *Brockenbrough* v. *Spindle,* 17 Grat. 21; *Greenhow* v. *Harris,* 6 Munf.

472; *Swayne* v. *Riddle,* 37 W. Va. 291; *Hall* v. *N. & W. Ry. Co.,* 44 W. Va. 36, but this is not one of that class.

Defendant's instruction No. 11, as originally tendered, objectionable in its requirement of "weighty proof" of plaintiff's inability to escape injury, was amended by the court, so as to eliminate that, and also an additional requirement that each juror must find a preponderance of evidence in favor of the plaintiff, in order to justify a verdict for him. To the giving of the instruction as so amended the defendant objected and, after further amending it, so as to restore requirement of belief on the part of each juror, again offered it, and the court refused to give it as last amended, because it had not been presented to plaintiff's attorney for inspection after the final alteration thereof. We think there was no error in this. The court may prescribe and enforce reasonable rules for the regulation of practice at its bar.

For the errors noted, the judgment will be reversed, the verdict set aside and a new trial awarded. The request for judgment here must be denied, since we reverse for error in the course of the trial and it does not appear that a good case cannot be made on another trial.

*Reversed, and New Trial Awarded.*

Williams, Judge, (*dissenting*) :

I do not think it was error to refuse defendant's instructions. The falling of the board upon plaintiff is *prima facie* proof of defendant's negligence, under the rule *res ipsa loquitur,* and, in the absence of any explanation of the cause of its falling, established plaintiff's right to recover, provided he was not negligent himself; and there is no evidence that he was. If plaintiff had asked for a peremptory instruction directing the jury to find for him, the court should have given it; or, if on the facts proven, the jury had found for defendant, it would have been the duty of the court to set it aside, on motion of plaintiff, because it would have been clearly against evidence. This is not a case involving conflict of evidence, which would give the jury the right to weigh and determine its relative value. The fact that the board fell from defendant's working place upon plaintiff,

and injured him, is not denied. The law says that such fact, unexplained, is *prima facie* proof of negligence, and casts the burden upon defendant to rebut it. No attempt was made to discharge that burden, and, under the rules of evidence, plaintiff's case was as fully established as if negligence had been proven by the most direct testimony. His proof was full and complete, because it was not denied, the presumptive negligence was not explained. How can it be logically said that defendant is prejudiced by the refusal of the court to give its instructions, when there is no evidence on which to predicate them; and, if their refusal works no prejudice, why should this Court reverse the judgment? The refusal was harmless error, if error at all. But I say it was not error, because there is not a particle of evidence contradicting the legal presumption of negligence arising from the fact of the falling of the board from defendant's work place. without proof of any particular cause. It was incumbent on defendant to show that it was not caused by its negligence. It did not discharge the burden, thus shifted to it; and the rule *res ipsa loquitur* supplies what plaintiff could not, and did not actually prove, and says that the cause of the board's falling was defendant's negligence. If the jury are given no facts to which to apply legal principles, there is no duty on the court to instruct them as to the law. Cases are tried on law and fact, not on law alone, and if there are no facts to support a case there is no need to give the jury the law. The board that struck plaintiff was 2x12 inches x 16 feet. Defendant knew that men were working in the basement. They had a right to work there. The surroundings made it incumbent upon it to use greater care than if no one had been working below. When the board started to fall warning was given to those below, and plaintiff immediately ran to escape danger. It appears that he would not have been hurt if he had run in some other direction, but the board would not have fallen on him where he did take refuge, if it had not struck a girder on the first floor and broke, and a piece of it glanced over to where he was. There is nothing in his conduct, or in the circumstances proven, from which the jury could even infer that he was negligent.

Defendant could make but two defenses: (1) That the board did not fall for want of due care of its servants, and (2) that

plaintiff was himself negligent. Defendant was not plaintiff's master. No contractural relation existed between them, hence the law of assumption of risk has no application. One can not plead assumption of risk in defense of his own negligence, that is against the policy of the law. As I see it, no other verdict could have been found. Because, in view of the facts established by proof, aided by a legal presumption, the rule *res ipsa loquitur,* negligence of defendant, as the proximate cause of plaintiff's injury, is established.