SCALES, Respondent, vs. BOYNTON CAB COMPANY, Appellant.

*February 5—March 5, 1929.*

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

*William F. Shaughnessy* of Milwaukee, for the respondent.

OWEN, J. On April 1, 1926, near midnight, the plaintiff summoned one of defendant's taxicabs to take him home. There had been a recent and heavy fall of snow and the streets were rough and bumpy. The driver proceeded at a speed of from twenty-three to twenty-five miles an hour. After going five or six blocks the cab struck a bump, which threw the plaintiff to the top of the cab. On his coming down, plaintiff's arm struck an elbow-rest on the side of the cab causing an injury which resulted in prolonged and serious suffering. The jury found the driver of the cab negligent, the plaintiff free from negligence, and assessed damages in the sum of $2,000, for which amount judgment was entered. For a reversal of this judgment appellant contends that the plaintiff was guilty of contributory negligence as a matter of law.

A taxicab company is a common carrier and owes to its passengers the highest degree of care consistent with the transaction of the business. *Anderson v. Yellow Cab Co.* 179 Wis. 300, 191 N. W. 748; *Korner v. Cosgrove,* 108 Ohio St. 484, 141 N. E. 267; 31 A. L. R. 1206, note. When one hires a taxicab he contracts for safe transportation to his destination. He has every right to expect that the taxicab is manned by a skilled and competent driver. The operation and management of the taxicab is committed exclusively to the driver whom he finds in charge. It is the duty of the driver to exercise a very high degree of care to safely

transport his passenger. It is not consistent with good public policy or fundamental principles to require the passenger to divide this responsibility with the driver. In many instances the taxicab is used to relieve the passenger from driving along routes of congested traffic. He should not be required to maintain a lookout. It should not be his duty to dictate the rate of speed. He should not be required to annoy the driver with constant admonition in order to preserve his right for safe transportation. This is especially true if he be in a strange city where he is unfamiliar with traffic regulations or traffic customs. In short, he has a right to rest secure in the belief that he is in the hands of a competent driver freed from individual responsibility for the safe and proper management of the taxicab. Thus in Huddy on Automobiles (8th ed.), p. 196, it is said: "Save in exceptional cases, the passenger is under no obligation to look for dangers. Nor, except in unusual cases, has the passenger any obligation in reference to the speed of the vehicle." We do not desire to be understood that there can be no situation in which it is the duty of the passenger to warn the driver or protest against excessive speed. But such occasions will be exceptional and unusual. Under ordinary circumstances the passenger owes no duty in this respect.

Here it is claimed that the plaintiff was guilty of contributory negligence because he acquiesced in an unlawful rate of speed for five or six blocks before the accident happened. That the general rate of speed was not the proximate cause of the accident is apparent when it is considered that that rate of speed was maintained for a distance of at least ten miles without any similar occurrence. It is apparent that the plaintiff sustained his injury because of the improper management of the car when crossing a street railway track, as testified to by the driver of the taxicab, or going into a depression made in the snow by the steam from a manhole, as testified to by the plaintiff. But whichever it was, the

accident happened by reason of improper management of the car at the particular point in question and not by reason of the general rate of speed maintained by the taxicab throughout the trip. It is rather apparent that the general rate of speed maintained, though unlawful, was not dangerous, giving rise to no duty on the part of the plaintiff to protest. He was under no duty to maintain a lookout which would have enabled him to discover the bump which caused the accident nor to direct the driver with reference to the proper management of the car in going over such bump. The jury found that there was no negligence on the part of the plaintiff. In order for us to reverse the judgment we must hold that plaintiff was guilty of negligence as a matter of law, which we are unable to do.

*By the Court.*—Judgment affirmed.