GEORGE A. WRIGHT

*v.*

MICHAEL J. VALAN, *et al.*

(No. 9880)

Submitted May 6, 1947.   Decided July 11, 1947.

Goodwin, Nesbitt & Spillers, Russell B. Goodwin and Russell G. Nesbitt, for plaintiffs in error.

Riley & Riley and James A. Byrum, for defendant in error.

HAYMOND, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Ohio County by the plaintiff, George A. Wright, to recover from the defendants Michael J. Valan, Nicholas F. Mansuetto and Michael N. Karavolas, doing business as J. M. Valan Company, damages for the destruction of an automobile and a quantity of window glass owned by him, in a fire caused by burning asphalt which escaped from a repair kettle operated by the defendants in Alley 14 in the City of Wheeling on June 21, 1945. The trial resulted in a judgment in favor of the plaintiff for $1,092.08 upon a directed verdict in that amount. To that judgment the defendants prosecute this writ of error.

On June 21, 1945, the defendants as contractors were engaged in repairing the roof of a four story business building known as the Pythian Building, located on the westerly portion of a business section in the City of Wheeling. This section is bounded on the north by Sixteenth Street, on the east by Chapline Street, on the south by Alley 14, and on the west by Market Street, all of which are public streets of that city. At that time the plaintiff conducted a printing business and occupied one of the rooms on the first floor of that portion of the building which abuts on Alley 14. This alley extends along the southern side of the Pythian Building on a descending grade which continues from Chapline Street on the east to Market Street on the west. The surface of the alley is lower at the western or Market Street corner than at the eastern or Chapline Street corner. From an eastern entrance to the building on Alley 14, the business rooms extend west along the alley to the corner of Market Street in this order: a room occupied by Panhandle Printing Company, next to it the room used by the plaintiff, then a room occupied by Electrolux Corporation, and next to it, at the corner of Alley 14 and Market Street, a room used by Caters Restaurant.

For several days previously and on the day of the fire, which occurred between two and two-thirty o'clock on

the afternoon of June 21, 1945, an employee of the defendants operated a large metal kettle to heat and melt asphalt which was used by other employees in repairing the roof of the Pythian Building. This kettle was located in Alley 14 several feet east of, and up the alley from, the room in the building used by the plaintiff, in a space closed to traffic by ropes stretched across the alley east and west of the kettle. Each of these ropes was placed at a distance of from fifteen to thirty five feet from the kettle. In the repair work six metal buckets, raised by ropes, were used to carry heated liquid asphalt from the kettle to the roof of the building.

The kettle was new and of the latest approved type customarily used for heating and melting asphalt. It was equipped with a thermometer to register the temperature of its contents and it was in charge of a competent and experienced operator, who drew the melted asphalt into each service bucket by means of a spigot. The spigot was placed on the upper or eastern side of the kettle with respect to its position in the alley, which was near the center and almost directly opposite the entrance to the room which adjoined the room occupied by the plaintiff. When full the kettle held about one hundred and sixty five gallons of asphalt.

About ten-thirty o'clock in the morning of the day of the fire the Fire Inspector of the City of Wheeling on a routine visit examined the general situation in connection with the operation of the kettle. He was satisfied with the conditions which he observed and he made no suggestions or complaint. He did, however, caution the operator to be careful to guard against fire.

Shortly before noon on the same day, the plaintiff, while proceeding by automobile to his place of business in the Pythian Building, met the fire inspector in another part of the city. The headquarters at which the inspector was stationed were near the Pythian Building and on his way to his work he rode with the plaintiff to a point in the eastern or Chapline Street section of Alley 14, where the

plaintiff parked his automobile a few feet from the rope located above and east of the kettle. When the plaintiff parked his automobile at that place the inspector warned him not to drive too close to the kettle and told him that if the asphalt caught fire it would burn his automobile. The plaintiff admitted that he understood and appreciated this warning and the testimony of the operator of the kettle is that he warned the plaintiff on two prior occasions not to park near it.

After the foregoing conversation between the plaintiff and the inspector, the plaintiff drove his automobile on a business errand from the place at· which he had parked it when he was with the inspector. From this errand he returned to his place of business and on his return he drove into Alley 14 at its western or Market Street entrance and parked his automobile in the alley below and west of the kettle and at a distance of approximately five feet from the west rope. According to the plaintiff, this rope was about fifteen feet from the kettle and on that basis the distance between the kettle and the parked automobile was from twenty to thirty five feet. The plaintiff says he did not lock the doors of his automobile, but the testimony of the operator of the kettle is that he tried to move it before the flowing asphalt came to it, which occurred a few minutes after the plaintiff left the automobile and entered his place of business, that the doors of the automobile were locked and the brakes set, and that he was unable, for that reason, to push it away from the burning asphalt which ran down the alley until it reached and set fire to the automobile.

Between two and two-thirty o'clock, and shortly after the plaintiff had parked his automobile below the kettle, the operator opened the spigot to transfer asphalt to one of the service buckets. When it entered the bucket there was a sudden flash and the asphalt took fire. At the time the operator was not wearing asbestos gloves. He tried to close the spigot with his hands and with a stick, but the fire spread so quickly that he was unable to stop the flow from the spigot or to extinguish the flames. The burning

asphalt flowed down the alley to the automobile, which was completely destroyed by the fire. In addition the fire damaged a quantity of window glass of the plaintiff which was located in his nearby place of business.

Thirty to forty five minutes before the asphalt ignited, the operator read the thermometer on the kettle and at that time it registered a temperature slightly less than four hundred degrees. It is not disputed that standard asphalt will not ignite at that temperature. There is evidence, however, that four hundred and twenty five degrees is a dangerous temperature and that at four hundred and fifty degrees standard asphalt will ignite if it is poured into a bucket which is cooler than the asphalt. The defendants introduced evidence that the asphalt used at the time was not standard asphalt but steep asphalt, the flash point of which, according to a witness for the plaintiff, is a temperature in excess of five hundred degrees.

The theory of the plaintiff is that the hot asphalt ignited when it came in contact with a bucket which carried a lower temperature than the asphalt; and that the fire was due to the negligence of the defendants in the operation of the kettle. There is evidence to indicate that the temperature of the service bucket in which the asphalt took fire was lower than that of the asphalt, but the extent of the difference between the two temperatures is not disclosed. It is reasonably clear that some such difference in temperature did exist, but it is significant that the apparently similar temperature of the other buckets which were in use shortly before the flash did not cause the hot asphalt placed in any of them to ignite. The plaintiff invokes the doctrine of *res ipsa loquitur* as applicable to the established facts and as decisive of the case in his favor. The defendants were unable to account for or explain the cause of the flash or blaze which ignited the asphalt and they insist that they were not negligent with respect to the character of the equipment used or in its operation by their employee. They also rely upon contributory negligence and known risks

assumed or incurred by the plaintiff as defenses to his claim. The amount of the damage in the event of a recovery by the plaintiff was not disputed and was stipulated by the parties to be $1,092.08, the amount of the verdict.

At the conclusion of the evidence offered in behalf of the plaintiff, the defendants moved the court to direct a verdict in their favor. This the court declined to do. At the conclusion of the evidence the defendants made no motion for a directed verdict but they offered an instruction which, if given, would have told the jury to return a verdict in their favor. The court declined to give any of the instructions repectively requested by the plaintiff and the defendants and in lieu of instructions charged the jury in writing. In the charge the court, after reviewing the evidence with respect to the issue of negligence, instructed the jury that upon the facts there was a presumption that the flash which ignited the flowing asphalt was caused by the negligence of the employee of the defendants; that the duty rested upon the defendants to rebut the presumption to show the cause of the flash or to explain its occurrence; that the defendants had not met that requirement; and that it was the duty of the jury to find the defendants guilty of negligence in causing the flash which resulted in the destruction of the property of the plaintiff. With respect to the defenses of contributory negligence and assumption of risk, asserted by the defendants, the court charged the jury that, under the evidence, the plaintiff had the right to park his automobile where he did and that, in so doing, he was not guilty of contributory negligence and did not assume any known or apparent risk. In concluding the charge the court directed the jury to return a verdict in favor of the plaintiff in the stipulated sum of $1,092.08. To this charge of the court the defendants excepted. Subsequently the court overruled a motion of the defendants to set aside the verdict and grant a new trial and, on

June 24, 1946, entered the judgment which the defendants assail in this Court.

By their several assignments of error the defendants seek reversal of the judgment in this Court upon these grounds: (1) The doctrine of *res ipsa loquitur* does not apply to the established facts; (2) the questions of negligence, contributory negligence and assumption of risk should have been submitted to the jury; (3) the trial court, in charging the jury, misstated the evidence; and (4) instructions, offered by the defendants and refused by the trial court, dealing with the questions of negligence, contributory negligence and assumption of risk, should have been given.

The rule or doctrine of *res ipsa loquitur* literally interpreted means "the thing itself speaks," Shain, Res Ipsa Loquitur, Presumptions and Burden of Proof, page 2; or "the thing speaks for itself," Black's Law Dictionary, Third Edition, page 1539; 45 C. J. 768. The doctrine is that when a person, who is without fault, is injured by an instrumentality at the time within the exclusive control of another person and the injury is such as in the ordinary course of events does not occur if the person who has such control uses due care, the injury is charged to the failure of such other person to exercise due care. See Shain, Res Ipsa Loquitur, Presumptions and Burden of Proof, page 1. It is based on the lessons of experience that an injury, in the usual course of every day conduct, does not occur if the person who controls an instrumentality which will likely produce injury exercises reasonable care to prevent its occurrence; and it is given practical effect as a part of the judicial function in administering justice between litigants. In *Jankey* v. *Hope Natural Gas Co.,* 98 W. Va. 412, 127 S. E. 199, the plaintiff sustained personal injuries in a sudden and unexplained explosion which occurred beneath a section of floor upon which he was engaged in the performance of his duties as an employee of the defendant. This Court held the doctrine of *res ipsa loquitur* applicable to the facts proved in

that case. In discussing the nature and the application of the doctrine, this Court said:

"It may be conceded that the bare fact of an injury, standing alone and with no supporting evidence, is not sufficient to justify an inference of negligence. It is equally well settled, however, that direct proof of negligence is not necessary. Negligence may be established by proof of facts which warrant its inference. Circumstances surrounding an occurrence are frequently held, if unexplained, to indicate an antecedent or coincident existence of negligence as the efficient cause of that occurrence. In such instances, the doctrine of *res ipsa loquitur* is invoked. This rule was defined and applied in *Snyder* v. *Wheeling Electrical Company*, 43 W. Va. 661, in *Bice* v. *Wheeling Electrical Company*, 62 W. Va. 685, in *Jones* v. *Bridge Company*, 70 W. Va. 374, as well as in other cases decided by this Court.

"In upholding this rule, courts have not intended thereby to exempt a plaintiff from the burden of proving negligence, either affirmatively or by circumstances making it a legitimate inference. This burden remains with a plaintiff. It was so held in *Veith* v. *Hope Salt Co.*, and in other cases cited by the defendant, supra. But this court has also held that when the physical facts of an accident themselves create a reasonable probability of negligence, such facts furnish evidence of negligence by force of the maxim, *res ipsa loquitur*. Injuries which do not ordinarily occur, when reasonable care is taken to avoid them, are of themselves evidential facts of negligence."

The doctrine is applicable in the conditions shown to exist in this case. The equipment and its management, before and at the time of the fire, were within the exclusive control of the defendants. The ignition of the liquid asphalt was unusual. An occurrence of that nature does not ordinarily happen in the operation of a kettle of the type involved in heating and melting asphalt. The cause of the flash was unknown to and unexplained

by the defendants and their employee, the operator of the kettle, who testified that, because of the smoke and the heat, he could not reach the spigot, with his hands or with a stick, to stop the flowing asphalt. Though there are two references in the testimony to other vague and remotely occurring kettle fires, no witness testified that he knew of or had experienced any similar occurrence.

The effect of the operation on the doctrine of *res ipsa loquitur*, in situations to which it applies, in giving rise to a presumption or an inference of negligence upon the part of the defendant has produced many conflicting judicial pronouncements. The conflict on that point appears in the decisions of this Court and of the appellate courts in other jurisdictions. Some cases hold that the occurrence of an injury, within the requirements of the rule, raises a rebuttable presumption of negligence upon the part of the person charged with negligence. See *Snyder* v. *Wheeling Electrical Co.*, 43 W. Va. 661, 28 S. E. 733; *Bice* v. *Wheeling Electrical Co.*, 62 W. Va. 685, 59 S. E. 626; *Jankey* v. *Hope Natural Gas Co.*, 98 W. Va. 412, 127 S. E. 199; *Parr* v. *Coca-Cola Bottling Works of Charleston*, 121 W. Va. 314, 3 S. E. 2d 499. Other cases say that the doctrine operates to permit an inference that the defendant was guilty of negligence. See *Jones* v. *Bridge Company*, 70 W. Va. 374, 73 S. E. 942; *Webb* v. *Brown & Williamson* Tobacco Co., 121 W. Va. 115, 2 S. E. 2d 898. In *Hunker* v. *Warner Brothers Theatres*, 115 W. Va. 641, 177 S. E. 629, it is asserted that the doctrine "raises a presumption or permits an inference that negligence caused the accident." In one recognized text treatise of law the statement is that the occurrence of an injury, in circumstances to which the rule applies, raises a presumption or permits an inference of negligence. 45 C. J. 1193. An important practical difference arises from these divergent views with respect to a presumption and an inference. A presumption of negligence, in the absence of evidence to rebut it, entitles the plaintiff to a directed verdict on the issue of negligence and leaves only the amount of the damages to be determined by the jury. A mere inference of negligence does not entitle the

plaintiff to a directed verdict, but requires the question of negligence, as well as the amount of the damages, to be determined by the jury.

In view of the recent decision of this Court in the case of *Holley* v. *Purity Baking Company,* 128 W. Va. 531, 37 S. E. 2d 729, however, it is not necessary, in the decision of this case, to engage in further discussion of the earlier cases decided by this Court in which the problem has arisen. In that case the defendant, a baking company, through a distrubutor, sold, in the original package, a cake wrapped in cellophane. In eating the cake, which contained a foreign substance, the purchaser sustained an injury. There was substantial evidence that the baking company used reasonable care in the manufacture of its products. By a three to two decision on that point, this Court held that there was no presumption of negligence upon the part of the baking company and that the jury, under the doctrine of *res ipsa loquitur,* could infer that the injury to the plaintiff did or did not result from negligence of the defendant in the manufacture of its product. By that decision this Court is committed to the proposition that the doctrine of *res ipsa loquitur* raises an inference, not a presumption, of negligence and that such inference does not provide the basis for a directed verdict in favor of the plaintiff on the issue of the negligence of the defendant. It follows that the trial court should have submitted to the jury, by proper instructions, the question of the negligence of the defendants and its refusal so to do was reversible error.

The defenses of contributory negligence and assumption of risk interposed by the defendants were not submitted to the jury. Notwithstanding the insistence of the defendants that these defenses presented questions for jury determination, the court treated those issues as questions of law and disposed of them by rejecting the contentions of the defendants.

As stated in the opinion of this Court in the case of *Hunn* v. *Windsor Hotel Company,* 119 W. Va. 215, 193 S. E. 57,

contributory negligence and assumption of risk are not identical. It is there asserted that "the essence of contributory negligence is carelessness; of assumption of risk, venturousness." With respect to the distinction between contributory negligence and assumption of risk this language appears in Volume 38, Am. Jur., Section 172, under the general title of negligence:

> "However, there is a clear distinction between the defense of assumption of risk and the defense of contributory negligence, notwithstanding they may arise under the same set of facts and may sometimes overlap. There is a line of demarcation which, if carefully scrutinized and followed, will allow the court to differentiate between them. Assumption of risk rests in contract or in the principle expressed by the ancient maxim, 'volenti non fit injuria,' whereas contributory negligence rests in tort. The former involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas the defense of contributory negligence implies the failure of the plaintiff to exercise due care."

There is ample authority that the doctrine of assumption of risk is not limited to the relation of master and servant or to other contractual relations especially with respect to situations in which a person voluntarily assumes what is sometimes characterized as an incurred risk incident to a known and appreciated danger. In those circumstances the defense to the claim of the plaintiff is recognized either as within the doctrine of assumption of risk extended and applied to a relation which does not arise from contract or as covered by an independent doctrine of incurred risk. By either doctrine the defense, when recognized in a relation not arising from contract, is based upon the maxim "volenti non fit injuria," which translated is that "he who consents can not receive an injury." See 38 Am. Jur., Negligence, Section 171; 49 C. J. 1043, 1044.

The evidence in this case does not tend to establish any venturousness upon the part of the plaintiff or indicate

that he assumed or incurred the risk of a known and appreciated danger in parking his automobile at a distance of approximately five feet from the rope which barred his approach to the kettle and in leaving it in that position. Knowledge and appreciation of the danger are necessary elements of the defense of assumption of risk. 38 Am. Jur., Negligence, Section 173. Though previously warned of the possibility of a fire which would burn his automobile, he had no reason to assume that such a fire would in fact occur. The defendants did not expect that any fire would happen. In fact, they assert that the kettle, as operated by their employee at the time, was not dangerous and that it did not constitute a fire hazard. They were unable to explain or account for the cause of the blaze. The plaintiff may not be held to have assumed or incurred the risk of a hazard which the defendants insist did not exist. The action of the trial court in rejecting the defense of assumed or incurred risk was correct.

With his knowledge, however, of the nearby presence of the heated kettle and the possibility of a fire which, if it occurred, would injure or destroy his automobile in its unguarded position below the level of the kettle on the slope down which its burning contents would likely flow to the automobile, it can not be said, as a matter of law, that the plaintiff was free from neglect in permitting his automobile to remain where he left it. Though a person in full control of his actions may approach a dangerous situation without being negligent, he may become negligent by remaining, with indifference or unconcern, in a particular position and by so doing expose himself to an apparent or subsequently occurring peril. The evidence with respect to the manner in which the plaintiff parked his automobile is conflicting. The plaintiff testified that he did not lock the doors of the automobile. The testimony of the operator of the kettle is that the doors were locked and the brakes were set when he tried unsuccessfully to move it before the burning asphalt reached it. These contradictory versions present a dispute with respect to facts which are material to the issue of contribu-

tory negligence. The province of the jury is to determine conflicting facts. When the facts bearing upon the issue of contributory negligence are in dispute or conflicting, the issue of contributory negligence is for the jury. Contributory negligence is generally a mixed question of law and fact and when the evidence is conflicting in relation to the existence of facts which would establish contributory negligence if such facts were not disputed, or when the facts admitted to be true or not denied are such that reasonable men may draw different conclusions from them, the question of contributory negligence is for the jury. *Ewing* v. *Lanark Fuel Co.*, 65 W. Va. 726, 65 S. E. 200, 29 L. R. A. (N. S.) 487; *Lindsey* v. *Bluefield Produce Co.*, 91 W. Va. 118, 112 S. E. 310; *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410. Under the evidence, the trial court should have submitted, by proper instructions, the question of contributory negligence to the jury instead of disposing of that issue as a question of law. Its action in these particulars was error which calls for reversal of the judgment.

Over the objection of the defendants, the trial court, in a written charge given in lieu of instructions, told the jury that the defendants admitted that the flash which set fire to the asphalt occurred when their employee opened the spigot and permitted hot asphalt to run into a cold bucket. Though there is evidence from which it may be inferred that the cause of the flash was the entry of hot asphalt into a cold bucket, no such admission by the defendants appears in the evidence or in any pleading. For that reason the statement, which instead of being admitted was denied by the defendants, should not have been incorporated in the charge. Instructions to the jury should be based upon the evidence and this requirement applies to a charge given by the court in lieu of instructions.

As heretofore indicated, the questions of negligence and contributory negligence should have been submitted to the jury. The charge of the court did not instruct the jury upon the law applicable to those two issues. Instead it

directed the jury to return a verdict in favor of the plaintiff for the specified amount stipulated by the parties. The defendants were entitled to have the jury instructed with respect to the law of negligence and contributory negligence. They offered instructions of that nature and instructions which related to other questions. The court, however, refused to give any of the requested instructions. As there must be a new trial of the case, it is proper to consider the instructions tendered by the defendants.

Instruction No. 1 was a peremptory instruction and, if given, would have directed a verdict for the defendants. As there was sufficient evidence of negligence upon the part of the defendants to carry that issue to the jury, the instruction was properly refused. Instruction No. 2 would have told the jury that it was the duty of the jury to follow the instructions of the court in considering the evidence and in reaching a verdict. It should have been given. Instruction No. 3 dealt with burden of proof and preponderance of the evidence. As it correctly stated these requirements it should have been given. Instruction No. 4 stated the rule with respect to preponderance of the evidence and told the jury that no juror was required to surrender his own opinion because other jurors entertained a different opinion. The instruction was good and it should have been given.

Instruction No. 5 ignored the effect of the doctrine of *res ipsa loquitur*. For that reason it was properly refused. Instruction No. 6 omitted the requirement of preponderance of the evidence and its refusal was proper. Instructions Nos. 7, 8, 9, 10, 13, 14 and 15 were based upon the defense of assumed or incurred risk. As the evidence was not sufficient to justify the submission of that defense to the jury, the action of the court in refusing the instructions was correct. Instruction No. 16 was based upon the theory of an unavoidable accident. It was properly refused.

Instructions Nos. 17 and 18 would have told the jury to find a verdict for the defendants if the jury believed from

the evidence that the damage to the automobile was caused by the concurrent negligence of the plaintiff and the defendants. The instructions, which are in substance identical, contained a correct statement of the law, and one of the instructions should have been given. Instruction No. 20, which related to the measure of damages, was superseded and rendered inapplicable by the stipulation of the parties which specified the amount of the damages in the event of a recovery by the plaintiff. No instructions numbered 11 and 12 were offered.

For the reasons indicated, the judgment is reversed, the verdict is set aside, and the case is remanded for a new trial which is hereby awarded the defendants.

*Reversed and remanded.*