95 S.E.2d 801 (1956)
Albert C. ELLIS
v.
Aubrey HENDERSON et al.
No. 10802.
Supreme Court of Appeals of West Virginia.
Submitted September 19, 1956.
Decided December 18, 1956.
Dissenting Opinion January 8, 1957.
Rehearing Granted March 4, 1957.
*802 C. E. Copen, Winfield, for plaintiff in error.
Herbert W. Bryan, C. Judson Pearson, St. Albans, for defendants in error.
LOVINS, Judge.
In this action of trespass on the case instituted in the Circuit Court of Putnam County to recover damages for personal injuries, the plaintiff, Albert C. Ellis, was awarded a judgment in the amount of $9,000 against the defendants, B. L. Henderson and Aubrey Henderson, the former's alleged employee, based upon a verdict of the jury. To this judgment the defendants, B. L. Henderson and Aubrey Henderson, prosecute this writ of error.
Plaintiff received severe injuries as the result of having been dumped from the bucket of a tractor-loader owned by the defendant, B. L. Henderson, and driven and operated by the defendant, Aubrey Henderson, the former's employee acting within the scope and authority of his employment, while the tractor-loader was being driven in a parade held on July 4, 1953, in the Town of Hurricane. During the previous year at a similar parade held in Hurricane on July fourth, the plaintiff had ridden in the same kind of tractor-loader owned by the defendant, B. L. Henderson, and operated by his employee, Aubrey Henderson. Upon the occasion on which the alleged injuries were sustained, the plaintiff had been promised by the defendant, Aubrey Henderson, that he could ride in the Fourth of July parade to be held in the Town of Hurricane in the year 1953, "if the big fat Chaney boy" did not ride.
As the parade was assembling, the Chaney boy did not appear, and the defendant, Aubrey Henderson, having lowered the bucket, plaintiff got into the lowered bucket, of the tractor-loader, and shortly thereafter, as the parade commenced, the defendant, Aubrey Henderson, raised the lift with the plaintiff inside, and proceeded to drive the tractor in the parade along and over the streets of the Town of Hurricane.
Also riding in the driver's seat of the tractor-loader with the defendant, Aubrey Henderson, was Aubrey Henderson's seven year old daughter, who sat on her father's knee as he drove the tractor-loader in the parade. As the parade proceeded along the streets of Hurricane for a distance of approximately one mile, during the course of which several stops were made on account *803 of the congestion in the parade, the bucket was suddenly released and plaintiff was thrown violently to the pavement, resulting in severe injuries which plaintiff contends are permanent.
The bucket in which plaintiff was riding was attached to a swivel with a pin at each end. Under this mechanical arrangement a spring-loaded bolt holds the shovel in a level position, which spring is released by a hand-lever located to the right and forward of the steering wheel of the tractor-loader, which can be operated only by a person seated in the cab of the tractor-loader. When the lever is operated, the bucket, in which the plaintiff was riding, tips forward and down and thereby dumps its contents, in the case at bar the contents of the bucket being the plaintiff, Albert C. Ellis.
Without contradiction this record discloses that a person riding in the bucket has no control of the mechanism of the bucket, and cannot release the mechanism so as to release the contents of the bucket.
The defendant, Aubrey Henderson, at the time plaintiff was injured, was operating a Wagner tractor-loader, which belonged to the defendant, B. L. Henderson, who at the time plaintiff received his injuries, as well as at the time plaintiff first rode in the bucket of the tractor-loader, was employed by the defendant, B. L. Henderson, in his feed and farm store located in the Town of Hurricane. So that this case may be stated fairly from the viewpoint of both parties plaintiff and defendant, we employ the language of brief of counsel for defendants, who are plaintiffs in error in this Court, which reads:
"This machine, motor driven, consisted of a tractor and loader; there was a `boom' on the loader and on the end of the boom was a `bucket' an essential part of the loader. This `bucket' was `dumped' by pulling a lever, and the boom was raised and lowered by using another lever, * * *."
The tractor-loader, in which plaintiff was riding at the time the shovel was lowered causing his injuries, was new and of substantial construction. During the course of the parade and at the time the plaintiff was injured there was no jolting of the tractor-loader, and the tractor-loader had not been driven over rough roads or terrain from the time plaintiff placed himself in it until he was injured. The record is silent as to whether there was any latent defect in the tractor-loader; but this record affirmatively discloses that the tractor-loader was so designed that, in the absence of a latent defect, the bucket could be released only by the lever on the right side of the steering column.
At the trial the defendant, Aubrey Henderson testified without contradiction that the means of lowering the boom of the vehicle was in good mechanical condition on the day plaintiff was injured; that the boom was up when witness returned to the Henderson garage with the vehicle, after the bucket had thrown plaintiff to the ground; and this witness testified that there was no defect in the mechanism of the vehicle which served to raise and lower the boom and bucket thereon, in which plaintiff was riding, which was known or by the exercise of reasonable care could have been known to the operator, Aubrey Henderson, or his employer, B. L. Henderson. In fact, this record is devoid of any evidence that the motor vehicle or the mechanism thereof had any latent defect, upon which an affirmative showing of negligence on the part of the defendants could be based, and the operator testified that at the time the bucket was caused to be lowered and plaintiff was injured, the lever had not been operated by him or his small daughter.
The extent of plaintiff's injuries, which ex necessitate enter into the question whether the verdict of the jury was excessive, is that the plaintiff Ellis, who at the time he was injured was forty-four years of age, suffered a fracture and dislocation of the right wrist, and a fracture of the left elbow, *804 which latter resulted in the complete loss of action in the elbow joint. Plaintiff's most serious injury was a comminuted and fragmented fracture of the humerus, the upper arm bone, in the left elbow, which reduced a part of it to the "texture of gravel."
The plaintiff was in the Herbert J. Thomas Memorial Hospital, South Charleston, from shortly after he was injured until July 18, 1953, when he was taken to the Veterans Administration Hospital, Huntington, where he remained, except for temporary releases, until February, 1955. He was subjected to one operation in Thomas Memorial Hospital, and three operations in the Veterans Hospital in efforts to save the use, or some of the use of this arm, but without success. The methods and surgical procedures employed in these efforts, it is unnecessary here to recite in detail. It suffices to say that in the trial Dr. Zablocki, an orthopedic surgeon of extensive training and experience, under whose care the plaintiff was placed in the Veterans Hospital, testified that as a result of plaintiff's injuries, he had a "flail joint" of the left elbow, without any bone connection in the former joint and the elbow could be swung in any direction; that there was no union whatever; that his left arm was entirely useless, except for a straight-uplift; that "without having the function of an elbow I would say that the arm isn't much good"; and that the only surgical procedure left open was another attempt to fuse the elbow and the physician left the impression this was a forlorn hope.
The plaintiff, being at the time of his injuries, a gratuitous guest passenger, or at least, if he was not an invitee, a guest by sufferance in defendants' vehicle, in which case he accepted the vehicle as he found it, "subject to the duty of his host to warn him of any known dangerous defect * * *." Lewellyn v. Shott, 109 W.Va. 379, 155 S.E. 115, 117; Marple v. Haddad, 103 W.Va. 508, 138 S.E. 113, 61 A.L.R. 1248. As this record discloses that the equipment on the vehicle was in good mechanical condition on the day of the parade and after the vehicle was returned to the Henderson garage, and if there was any defect in the vehicle, it was hidden and was not known, or could not have been known to the defendants, the defendant, Aubrey Henderson, was under no duty under the above-cited cases to warn the plaintiff of such hidden danger, if any existed. However, the bucket was suddenly lowered with plaintiff in it. What caused it to do so is not disclosed by this record, and the factual solution of the question is a matter of conjecture, which, in our opinion, is beyond jury determination unless this case lends itself to the application of the doctrine of res ipsa loquitur.
If the jury was not entitled to find by a preponderance of affirmative evidence that the defendant operator or driver of the motor vehicle was guilty of actionable negligence, the plaintiff is not entitled to recover on the basis of the present record, unless, as plaintiff's counsel assert, the doctrine of res ipsa loquitur applies.
The doctrine of res ipsa loquitur does not apply unless the only reasonable conclusion arising from the circumstances shows that the damage occurred by reason of the negligence of the defendant. Crotty v. Virginian Railway Co., 115 W.Va. 558, 177 S.E. 609. The principal elements of the doctrine of res ipsa loquitur are stated as follows:
"There must be reasonable evidence of negligence. But where a thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."
Pt. 3, syllabus, Snyder v. Wheeling Electrical Co., 43 W.Va. 661, 28 S.E. 733, 39 L.R.A. 499. See Barker v. Withers and Poindexter, 140 W.Va. ___, 92 S.E.2d 705; *805 Jones v. Riverside Bridge Co., 70 W.Va. 374, 73 S.E. 942; Jankey v. Hope Natural Gas Co., 98 W.Va. 412, 417, 127 S.E. 199. In later cases, this Court has mentioned the element of exclusive control by the defendant. See Wright v. Valan, 130 W.Va. 466, 473, 43 S.E.2d 364; Pope v. Edward M. Rude Carrier Corp., 138 W.Va. 218, 229, 75 S.E.2d 584. An inference of negligence arising from the application of the rule of res ipsa loquitur may be rebutted. Redman v. Community Hotel Corp., 138 W.Va. 456, 76 S.E.2d 759.
It will serve no useful purpose further to discuss the cases in which this Court has applied the doctrine of res ipsa loquitur. However, under the holding of this Court in the case of Holley v. Purity Baking Co., 128 W.Va. 531, 37 S.E.2d 729, 167 A.L.R. 648, this Court has committed itself to the rule that the doctrine of res ipsa loquitur gives rise to an inference, not a presumption, of negligence, which inference, of course, does not provide the basis for a directed verdict in favor of the plaintiff on the issue whether the defendant's alleged negligence caused plaintiff's injury.
Our attention has not been invited to any case decided by this Court where the doctrine has been applied, which involved the relation between the operator of a motor vehicle and an occupant thereof, wherein the passenger in the motor vehicle has sought to recover for personal injuries because of the operation or construction of the motor vehicle, whether such passenger is an invited guest, a trespasser, a guest by sufferance or a mere licensee. See, however, Boggs v. Plybon, 157 Va. 30, 160 S.E. 77; Jones v. Nugent, 164 Va. 378, 180 S.E. 161; Manker v. Shaffer, 161 Ohio St. 285, 118 N.E.2d 641; Weller v. Worstall, 129 Ohio St. 596, 196 N.E. 637.
We are of opinion that the doctrine of res ipsa loquitur should not be applied to the instant case, notwithstanding the motor vehicle in which plaintiff was riding was a tractor-loader in which there was no apparatus in or about the bucket which would control the raising or lowering of the boom. In this latter regard, it should be noted that the inference which the application of the doctrine of res ipsa loquitur permits is grounded upon the fact that the evidence of the true cause of an injured person's injury is accessible to the defendant, but practically inaccessible to the injured person. It is based upon the norm that the allegedly negligent driver of a motor vehicle has superior knowledge to that of the injured party. As stated in 38 Am. Jur., Negligence, Section 299:
"If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."
Such a situation is not present in the instant record.
This case is somewhat analogous to the case of a paying passenger on a common carrier, the basis of which is that the passenger has no control. See generally the annotations to Garrow v. Seattle Taxicab Co., 135 Wash. 630, 238 P. 623, 45 A.L.R. 293; Scales v. Boynton Cab Co., 198 Wis. 293, 223 N.W. 836, 69 A.L.R. 978; Lewis v. Pacific Greyhound Lines, Inc., 147 Or. 588, 34 P.2d 616, 96 A.L.R. 718.
In every such case involving the relation between the driver of a motor vehicle and such gratuitous passenger, this Court has not applied the doctrine of res ipsa loquitur from which the jury could infer negligence, but has required affirmative proof of primary negligence on the part of the driver of the motor vehicle in which the gratuitous passenger was riding, from which the jury reasonably could find from a preponderance thereof that the alleged negligence was the proximate cause of the plaintiff's injury.
It follows from the foregoing that the doctrine of res ipsa loquitur does not apply to the instant case, and there being no affirmative proof of negligence on the *806 part of Aubrey Henderson, or his employer, B. L. Henderson, this case, in our opinion, is not one properly for jury determination.
Therefore, the trial court erred, as assigned in point one of the assignments of error contained in the petition of the defendants for a writ of error, in overruling defendants' motion to set aside the verdict and grant defendants a new trial.
Included in point one of the defendants' assignments of error is the assertion that the verdict of $9,000 is excessive. This verdict in view of plaintiff's severe permanent injuries, consisting of the almost complete loss of the use of plaintiff's left elbow, was, in our opinion, not excessive. We say this because the record does not disclose that the jury was influenced by passion, bias, or prejudice, or misled by some mistaken view of the case. See pt. 3 syl. French v. Sinkford, 132 W.Va. 66, 54 S.E.2d 38; pt. 3 syl., Raines v. Faulkner, 131 W.Va. 10, 48 S.E.2d 393; Webb v. Brown & Williamson Tobacco Co., 121 W.Va. 115, 2 S.E.2d 898; and Virginia Iron, Coal & Coke Co. v. Hughes' Adm'r, 118 Va. 731, 88 S.E. 88.
Where this Court in an action at law reverses the judgment of a trial court and sets aside the verdict of the jury on motion for a new trial, it will award a new trial. See Koblegard Co. v. Maxwell, 127 W.Va. 630, pt. 8 syl., 34 S.E.2d 116.
The solution of these two questions of substantive law, being determinative of the decision of this case bearing on the question of primary negligence, renders moot the assignments of error on the rulings of the trial court in granting and refusing the instructions. However, it may be proper to indicate that as to plaintiff's instructions 2, 3 and 4, given over the objection of defendant, we find no error in the giving of instructions 2 and 4; but instruction 3 should not have been given for the reason it is based upon the doctrine res ipsa loquitur which is inapplicable in this case. The trial court refused defendant's instructions 1, 4 and 6. We believe the court committed no error in the refusal of these instructions.
The foregoing disposes of all of the assignments of error, and for the reason that this Court is of opinion that this record contains no affirmative showing of negligence or proximate cause, and the doctrine of res ipsa loquitur does not apply, we reverse the judgment of the Circuit Court of Putnam County, set aside the verdict, and grant the defendants a new trial.
Judgment reversed; verdict set aside; new trial awarded.
RILEY, Judge (dissenting).
In deference to the members of this Court who participated in the opinion of the Court, I respectfully dissent.
This record shows beyond peradventure that Aubrey Henderson, who was an employee of B. L. Henderson, one of the defendants, and who was acting within the scope of his employment and at whose invitation plaintiff was riding in the bucket, was in complete control of the apparatus which operated the bucket; and that the tractor-loader was in good condition, so far as the raising and lowering of the bucket were concerned, when it was returned to the garage after the parade. For this reason I am of opinion that under the doctrine of res ipsa loquitur the instant jury had a right to infer that the defendants were negligent in the operation of the tractor-loader. Aubrey Henderson testified that while he was riding in the front seat of the tractor-loader with his young daughter on his knee, the lever controlling the operation of the bucket was not released by either him or his daughter. The record, however, discloses beyond contradiction that the bucket was suddenly dropped, throwing plaintiff to the ground, and thereby causing him to be severely and permanently injured.
Without making this dissenting opinion any longer, I simply say that the doctrine of res ipsa loquitur, which prevails in this jurisdiction, should be applied to the case at bar. The leading case in this jurisdiction in which the doctrine of res ipsa loquitur was ably discussed by Judge Haymond is *807 the case of Wright v. Valan, 130 W.Va. 466, 43 S.E.2d 364, 365. In point 2 of the syllabus thereof this Court held: "In an action based upon negligence for the recovery of damages there must be reasonable evidence that the defendant was negligent. When, however, the instrumentality which causes an injury is shown to be under the management and the control of the defendant and the injury is such as in the ordinary course of events does not happen if the person having such management and control uses proper care, the occurrence of the injury furnishes reasonable evidence, in the absence of explanation by the defendant, that it resulted from negligence." See Shain, Res Ipsa Loquitur, Presumptions and Burden of Proof. See also Black's Law Dict. 4th ed., 1470; 45 C.J. 768; 65 C.J.S., Negligence, § 220(2); Jankey v. Hope Natural Gas Co., 98 W.Va. 412, 127 S.E. 199; Jones v. Riverside Bridge Co., 70 W.Va. 374, pt. 2 syl., 73 S.E. 942; Webb v. Brown & Williamson Tobacco Co., 121 W.Va. 115, 2 S.E.2d 898; Holley v. Purity Baking Co., 128 W.Va. 531, 37 S.E.2d 729, 167 A.L.R. 648, all of which authorities are cited in the Wright case at pages 475 and 476 of 130 W.Va., at pages 369 and 370 of 43 S.E.2d, enunciating the principles adopted by this Court in the application of the doctrine of res ipsa loquitur.
The cause of plaintiff's injuries is unexplained in the record, and the apparatus, which evidently caused plaintiff to be thrown to the ground and injured, was in the exclusive control of the defendant, Aubrey Henderson, agent and employee of the defendant, B. L. Henderson. In all deference to the members of the Court who joined in the majority opinion, I am of the opinion that if this Court has ever had a case in which doctrine of res ipsa loquitur should apply, it is in the case at bar.
For the foregoing reasons I would affirm the judgment of the Circuit Court of Putnam County.
I am authorized to say that Judge BROWNING joins in this dissent.